*To be Argued by:* Loraine C. Jelinek

# 21-2555(L)
# 21-2715 (XAP)

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

TRUMAN FRIERSON,

*PLAINTIFF – APPELLANT-CROSS-APPELLEE,*

**V.**

TROY CITY SCHOOL DISTRICT, PAUL REINISH, DIRECTOR OF PHYSICAL EDUCATION, HEALTH AND ATHLETICS, TROY CITY SCHOOL DISTRICT BOARD OF EDUCATION, JOHN CARMELLO, SUPERINTENDENT,

*DEFENDANTS – APPELLEES- CROSS-APPELLANTS,*

**AND**

PAUL BEARUP, KATHY AHERN, SCHOOL ATTORNEY, JOE MARIANO, PRINCIPAL,

*DEFENDANTS.*

On Appeal from the United States District Court for the Northern District of New York, Case No.: 1:17-cv-00044

## BRIEF FOR DEFENDANTS - APPELLEES - CROSS-APPELLANTS

JOHNSON & LAWS, LLC
*Attorneys for Defendants-Appellees-Cross-Appellants*
646 Plank Road, Suite 205
Clifton Park, New York 12065
(518) 490-6428

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**.................................................................................iv

**JURISDICTIONAL STATEMENT**.......................................................................1

**APPELLEES' COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW**................................................................................................................3

I.      Whether the lower court erred in its March 15, 2018 Memorandum-Decision and Order to the extent that such Order construed Plaintiff's Complaint to have asserted an unpled claim for violating Plaintiff's First Amendment right to freedom of assembly.

II.     Whether the lower court erred in its June 5, 2019 Memorandum-Decision and Order to the extent that such Order construed Plaintiff's Complaint to have asserted an unpled claim for violating Plaintiff's First Amendment right to freedom of assembly.

III.    Whether the lower court erred when it Ordered the jury charge and the jury verdict form to include an unpled First Amendment Freedom of Assembly claim over the objections of Appellees' counsel.

IV.    Whether Plaintiff has satisfied the stringent standard set forth in FRCP Rule 50 and is entitled to the extraordinary relief of setting aside the trial jury's properly-reached September 11, 2020 verdict with respect to Plaintiff's unpled Freedom of Assembly claim.

V.     Whether the lower court properly dismissed Plaintiff's legally defective Fourteenth Amendment Due Process claim on Appellees' FRCP Rule 12(b) Motion to Dismiss.

VI.    Whether the lower court properly dismissed Plaintiff's legally defective *Monell* claim against the Troy City School District on Appellees' FRCP Rule 56(a) Summary Judgment Motion.

VII.   Whether the jury's properly-reached September 11, 2020 verdict entitles Appellees Carmello and Reinisch to Qualified Immunity from suit as a matter of law.

i

**RELEVANT STATEMENT OF THE CASE** ......................................................5

**ARGUMENT SUMMARY** ...........................................................................10

**APPLICABLE STANDARDS OF REVIEW** ...............................................15

    i.    **Legal Standard for FRCP Rule 12(b)(6)** ...………………………15

    ii.    **Legal Standard for FRCP Rule 50(b)** …………………………16

    iii.    **Legal Standard for FRCP Rule 56(a)**………..……………………18

**LEGAL ARGUMENT**..................................................................................19

**POINT I:**    **THE LOWER COURT ERRED IN CONSTRUING PLAINTIFF'S INCOMPREHENSIBLE PLEADINGS TO HAVE ASSERTED AN UNPLED CLAIM OF FIRST AMENDMENT FREEDOM OF ASSEMBLY AGAINST APPELLEES** .....................................................................19

**POINT II:**    **PLAINTIFF'S APPEAL SEEKING A DIRECTED VERDICT ON HIS UNPLED FREEDOM OF ASSEMBLY CLAIM UNDER FRCP RULE 50(b) MUST BE REJECTED AS A MATTER OF LAW** ...............................................26

    A. The Trial Evidence Substantially Demonstrated that the January 13, 2017 Restriction Was Both Reasonable and Viewpoint Neutral ........................................................................27

        i.    Reasonableness ...........................................................28
        ii.    The Inapplicability of *Huminski v. Corsones*.................34
        iii.    Viewpoint-Neutrality ......................................................36

    B. Plaintiff Failed to Preserve his Novel Claim Regarding Appellees' Affirmative Defense and Has Therefore Waived His ability to Challenge Same on Appeal .....................................39

**POINT III:**    **THE LOWER COURT'S DISMISSAL OF PLAINTIFF'S IMPLIED PROCEDURAL DUE PROCESS CLAIM MUST BE AFFIRMED** ..............................................................41

**POINT IV: PLAINTIFF HAS FAILED TO PLEAD, AND CANNOT ESTABLISH, A *MONELL* CLAIM AGAINST TROY CITY SCHOOL DISTRICT**.....................................................42

**POINT V: THE JURY'S SEPTEMBER 11, 2020 VERDICT CONFIRMED THAT APPELLEES CARMELLO AND REINISCH ARE ENTITLED TO QUALIFIED IMMUNITY AS A MATTER OF LAW** ................................45

**CONCLUSION STATING THE PRECISE RELIEF SOUGHT** ....................48

**CERTIFICATE OF COMPLIANCE**.................................................49

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................15

*Bracey v. Bd. of Educ.*,
368 F.3d 108 (2d Cir. 2004) ...............................................................17, 39

*Carey v. Brown*,
442 U.S. 455 (1980)...................................................................................31

*Cash v. County of Erie*,
654 F.3d 324 (2d Cir. 2011) ....................................................................16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................18

*Chamberlain v. City of White Plains*,
960 F.3d 100 (2d Cir. 2020) ....................................................................15

*Charles W. v. Maul*,
214 F.3d 350 (2d Cir. 2000) ....................................................................15

*Ciambriello v. County of Nassau*,
292 F.3d 307 (2d Cir. 2002) ....................................................................41

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
473 U.S. 788 (1985)...................................................................................28

*Cross v. N.Y.C. Transit Auth.*,
417 F.3d 241 (2d Cir. 2005) ....................................................................16

*Cruz v. Local Union No. 3 of the IBEW*,
34 F.3d 1148 (2d Cir. 2015) ....................................................................39

*Frierson v. Reinisch*,
    806 Fed. Appx. 54 (2d Cir. 2020).......................................................46

*Galdieri-Ambrosini v. National Realty & Dev. Corp.*,
    136 F.3d 276 (2d Cir. 1998) .....................................................17, 27

*Hotel Emps. & Rest Emps. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*,
    311 F.3d 534 (2d Cir. 2002) .............................................................28

*Huminski v. Corsones*,
    396 F.3d 53 (2d Cir. 2004) ...............................................34, 35, 36

*Jett v. Dallas Indep. Sch. Dist.*,
    491 U.S. 701 (1989)...........................................................................42

*Johnson v. Perry*,
    859 F.3d 156 (2d Cir. 2017) ..........................................24, 25, 28, 41

*Jones v. Bay Shore Union Free Sch. Dist.*,
    170 F. Supp. 3d 420 (E.D.N.Y. 2016) .............................................43

*Kerzer v. Kingly Mfg.*,
    156 F.3d 396 (2d Cir. 1998) .............................................................19

*Maroney v. Vill. of Norwood*,
    2020 U.S. Dist. LEXIS 132301 (N.D.N.Y. 2020).............................43

*McCardle v. Haddad*,
    131 F.3d 43 (2d Cir. 1997) .....................................................17, 27

*Monell v. Dep't of Soc. Serv. of New York*,
    436 U.S. 658 (1978).....................................................................*passim*

*Oliveras v. Saranac Lake Cent. Sch. Dist.*,
    2014 U.S. Dist. LEXIS 44603 (N.D.N.Y. 2014)..............................21

*Patterson v. County of Oneida*,
    375 F.3d 206 (2d Cir. 2004) .............................................................42

*Peck v. Baldwinsville Cent. Sch. Dist.*,
    426 F.3d 617 (2d Cir. 2005) .............................................................28

*Pembaur v. Cincinnati,*
    475 U.S. 469 (1986)................................................................42, 43

*Reeves v. Sanderson Plumbing,*
    530 U.S. 133 (2000)................................................................16, 17

*Rexnord Holdings, Inc. v. Bidermann,*
    21 F.3d 522 (2d Cir. 1994) ............................................................19

*Roe v. City of Waterbury,*
    542 F.3d 31 (2d Cir. 2008) ............................................................18

*Salahuddin v. Cuomo,*
    861 F.2d 40 (2d Cir. 1988) ............................................................22

*Silano v. Sag Harbor Union Free Sch. Dis. Bd. of Educ.,*
    42 F.3d 719 (2d Cir. 1994) ............................................................41

*Simmons v. Abruzzo,*
    49 F.3d 83 (2d Cir. 1995) ..............................................................22

*Trostle v. New York,*
    2016 U.S. Dist. LEXIS 38370 (N.D.N.Y. 2016)........................18, 39

*Turkmen v. Ashcroft,*
    589 F.3d 542 (2d Cir. 2009) ..........................................................15

*In re Vivendi Universal, S.A. Sec. Litig.,*
    765 F. Supp. 2d 512 (S.D.N.Y. 2011) ............................................16

*Wagner v. Swarts,*
    827 F. Supp. 2d 85 (N.D.N.Y. 2011), *aff'd in Wagner v. Sprague,*
    489 F. App'x 500 (2d Cir. 2012) ...............................................18, 19

*Wiercinski v. Mangia 57, Inc.,*
    787 F.3d 106 (2d Cir. 2015) .........................................16, 18, 27, 38

*Williams v. Town of Greenburgh,*
    535 F.3d 71 (2d Cir. 2008) ............................................................21

*Wynder v. McMahon,*
    360 F.3d 73 (2d Cir. 2004) ........................................................21, 22

*Zellner v. Summerlin*,
  494 F.3d 344 (2d Cir. 2007) ...............................................................................17

**Statutes**

42 U.S.C. § 1983 ................................................................................*passim*

N.Y. Educ. L. § 1709(1), (2)................................................................43

N.Y. Penal L. §§ 140.00 and 140.03....................................................8

**Other Authorities**

First Amendment.................................................................................*passim*

Fourteenth Amendment ......................................................................4, 15

FRCP Rule 8 .......................................................................................*passim*

FRCP Rule 12(b)................................................................................*passim*

FRCP Rule 50 .....................................................................................*passim*

FRCP Rule 56 .....................................................................................*passim*

FRCP Rule 59 .....................................................................................2

## JURISDICTIONAL STATEMENT

Appellant-Cross-Appellee, Truman Frierson (hereinafter "Plaintiff"), originally commenced this action *pro se* by filing his Original Complaint on January 13, 2017 (USDC NDNY ECF No. 1). Thereafter, Plaintiff was afforded leave by the U.S. District Court for the Northern District of New York ("lower court") to file an Amended Complaint (the "Operative Complaint"), which Plaintiff filed on June 2, 2017 (JA-24).[1] By Decision and Order dated March 15, 2018 (SA-1), the lower court granted Appellees-Cross-Appellants' (hereinafter "Appellees")[2] FRCP Rule 12(b) Motion to Dismiss, dismissing all claims asserted by Plaintiff with the single exception of Plaintiff's First Amendment Retaliation claim brought under 42 U.S.C. § 1983.[3] On June 8, 2018, the lower court granted Appellees' motion for reconsideration, dismissing all claims against Appellees' private attorney, Kathy Ahern (USDC NDNY ECF No. 58). Plaintiff's current counsel recorded their representation on behalf of Plaintiff in late 2018 (JA-13). Following the completion of discovery, Appellees moved for summary judgment, which Plaintiff's counsel opposed and, by Decision and Order dated June 5, 2019 (SA-15), the lower court

---

[1] Plaintiff's Original Complaint and Operative Amended Complaint will hereinafter collectively be referred to as "Complaints."

[2] The "former Defendants" in this action, who are not parties to either Plaintiff's Appeal or Appellees' Cross-Appeal before this Court, are Paul Bearup, Kathy Ahern, and Joseph Mariano.

[3] Appellees are still uncertain as to whether the lower court construed Plaintiff's Complaints to have asserted a "freedom of assembly" claim at the time that the lower court issued its March 15, 2018 Decision and Order on Appellees' motion to dismiss.

dismissed all claims and former Defendants from this case apart from Plaintiff's First Amendment Retaliation claim against Appellees Reinisch and Carmello (SA-27).

Plaintiff demanded a jury trial, and a jury trial was set to start on September 8, 2020 with the two remaining Defendants, Appellees Reinisch and Carmello (JA-19). During a pre-trial conference held on September 4, 2020, just four (4) days before trial, counsel for Appellees Reinisch and Carmello were notified that the lower court would be instructing and charging the jury with an unpled First Amendment "Freedom of Assembly" claim, in addition to Plaintiff's claim of retaliation against Appellees (JA-19, 1119). While the lower court even expressed skepticism as to this unpled freedom of assembly claim during the September 4, 2020 pre-trial conference, the lower court nonetheless permitted the unpled claim to be charged to the jury over defense counsels' objections (JA-1119). On September 11, 2020, the jury rendered a verdict for Appellees on **both** Plaintiff's retaliation and unpled assembly claims (SA-47). The lower court issued the Judgment in Appellees' favor that same day, September 11, 2020 (*see id.*).

Following the jury trial, Plaintiff made a post-trial motion, on October 9, 2020, pursuant to FRCP Rules 50 and 59, seeking a directed verdict as well as a new trial on Plaintiff's First Amendment claims (USDC NDNY ECF No. 132-3). By Decision and Order dated September 27, 2021, the lower court denied Plaintiff's post-trial motion in its entirety, as well as granted costs for Appellees (SA-62). The

lower court's September 27, 2021 decision on Plaintiff's post-trial motion was the first time that the lower court engaged in any analysis of Plaintiff's unpled "freedom of assembly" claim (SA-53). Still dissatisfied, Plaintiff filed a Notice of Appeal with the lower court on October 7, 2021 (JA-21). Plaintiff's appeal before this Court challenges only: 1) the dismissal of Plaintiff's unpled "freedom of assembly" claim at trial (not the dismissed retaliation claim); 2) the dismissal of Plaintiff's defective *Monell* claim at the summary judgment stage; and 3) the dismissal of Plaintiff's defective due process claim at the motion to dismiss stage (ECF No. 54 at 9). On October 27, 2021, Appellees timely filed a Notice of Cross-Appeal with the lower court, whereby Appellees seek a limited reversal of the lower court's March 15, 2018 and June 5, 2019 decisions on Appellees' respective motions to the extent that such decisions did not dismiss Plaintiff's unpled "freedom of assembly" claim. The aforementioned facts are the underlying basis for this Court's jurisdiction.

## APPELLEES' COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.    Whether the lower court erred in its March 15, 2018 Memorandum-Decision and Order to the extent that such Order construed Plaintiff's Complaint to have asserted an unpled claim for violating Plaintiff's First Amendment right to freedom of assembly.

II.   Whether the lower court erred in its June 5, 2019 Memorandum-Decision and Order to the extent that such Order construed Plaintiff's Complaint to

have asserted an unpled claim for violating Plaintiff's First Amendment right to freedom of assembly.

III. Whether the lower court erred when it Ordered the jury charge and the jury verdict form to include an unpled First Amendment Freedom of Assembly claim over the objections of Appellees' counsel.

IV. Whether Plaintiff has satisfied the stringent standard set forth in FRCP Rule 50 and is entitled to the extraordinary relief of setting aside the trial jury's properly-reached September 11, 2020 verdict with respect to Plaintiff's unpled Freedom of Assembly claim.

V. Whether the lower court properly dismissed Plaintiff's legally defective Fourteenth Amendment Due Process claim on Appellees' FRCP Rule 12(b) Motion to Dismiss.

VI. Whether the lower court properly dismissed Plaintiff's legally defective *Monell* claim against the Troy City School District on Appellees' FRCP Rule 56(a) Summary Judgment Motion.

VII. Whether the jury's properly-reached September 11, 2020 verdict entitles Appellees Carmello and Reinisch to Qualified Immunity from suit as a matter of law.

## **RELEVANT STATEMENT OF THE CASE**

Since the facts in this case have already been extensively briefed in the voluminous record before this Court, Appellees will refrain from reiterating same apart from addressing the self-serving "spin" that Plaintiff provides in his factual theory. Contrary to Plaintiff's narrative in his "statement of the case" on appeal, it is undisputable that Plaintiff's incomprehensible Complaints failed to plead a "freedom of assembly" claim against Appellees (JA 24-67; ECF No. 54 at 12). Further, the record evidence reveals that Plaintiff had expressed numerous criticisms of the Troy CSD girls' varsity basketball coach (Paul Bearup) for **several years** prior to Plaintiff's alarming January 9, 2017 misconduct, none of which "speech" was ever restricted, in any way, by Appellees (JA-40; SA 58-59; ECF No. 54 at 15). Moreover, while Plaintiff continues to "spin" the facts by ambiguously stating that MB (one of the members of the girls' basketball team) did not enjoy the reminder of the basketball season and "*went to counseling*," Plaintiff remarkably fails to mention that MB's mother testified at the trial that MB suffered in the way that she did—to such an extent that it required her to go to counseling—***because* of Plaintiff's misconduct on the evening of January 9, 2017** (*see* SA-1525). Plaintiff's continuing disregard of the fact that at least one of the members of the girls' basketball team suffered actual psychological and emotional injuries as a result of Plaintiff's inappropriate behaviors on January 9, 2017 further exemplifies the

5

reasonableness of Appellees' decision to implement the restriction to protect the safety and well-being of its student athletes.

In Plaintiff's verbose statement of facts before this Court, Plaintiff: 1) acknowledges that he had trespassed into the Troy CSD high-school building on multiple prior occasions (unbeknown to Appellees at the time); 2) violated numerous school policies; 3) did not obtain prior authorization from school officials before sneaking into the high-school building on January 9, 2017; 4) fails to indicate that Plaintiff was even critical of the basketball coach during Plaintiff's January 9, 2017 misconduct; 5) acknowledges that the Troy CSD surveillance footage was "silent," thus did not contain any audio; and 6) acknowledges that Appellees found Plaintiff's disturbing conduct on the evening of January 9, 2017 to be, among other things, "*appalling*" and "*beyond inappropriate*." (ECF No. 54 at 18-21).

Appellees offer the following brief summary of relevant factual findings which the jury could have made (and apparently did make) based upon the evidence presented during the trial in reaching the jury's proper verdict:

- During Appellees' substantial careers as Troy CSD administrators, they have only restricted parents from attending athletic events in those extreme circumstances where a parent's behavior directly threatened the well-being and/or safety of Troy CSD student athletes, or, in the case of Plaintiff's

alarming January 9, 2017 trespassing, actually caused an injury to one of the girls' basketball team members (i.e., "MB");

- Plaintiff's January 9, 2017 misconduct violated the Troy CSD's: (a) security procedures; (b) visitor's policy; (c) high-school security protocols (which Plaintiff was familiar with); (d) Building Use Policy; and (e) the Code of Conduct for all Troy CSD student-athletes and parents (which Plaintiff admitted receiving from Troy CSD every year);

- Plaintiff falsely testified at trial that on January 9, 2017: the sole handicapped entrance door he used to gain entry into the high-school building was unlocked; that the handicapped door did not have signs stating "♿ ACCESSIBLE ENTRANCE ONLY: ALL OTHERS ENTER THROUGH FRONT GYM"; that the girls' varsity basketball players "rushed" up to him in the hallway outside of the girls' locker room; and that his cafeteria meeting was prompted by the "needs" of the student athletes (rather than Plaintiff's personal interests);

- Plaintiff was not a credible or reliable witness, in light of, *inter alia:* his admission to falsifying enrollment forms for his daughters to attend the Troy CSD; his lying about the reasons for his falsifying documents; his falsifying his residential address on Court documents; his description of the January 9,

7

2017 cafeteria meeting as compared to the actual video depicting Plaintiff; and Plaintiff's uncooperative behaviors on the witness stand at trial;

- Plaintiff's January 9, 2017 behavior towards minor female student athletes, as depicted in the surveillance video (including Plaintiff embracing multiple students who were not his daughter and disturbingly repeatedly kissing and hugging members of the girls' basketball team) constituted outrageous and appalling behavior that Appellees reasonably took steps to prevent;

- Plaintiff's unauthorized January 9, 2017 entry into the high-school building,[4] actually causing psychological and/or emotional damage to at least one of the members of the girls' basketball team ("MB"), resulting in MB needing to seek and attend counseling.

Remarkably, when Plaintiff's counsel called Appellee Reinisch to the stand during Plaintiff's case in chief, Plaintiff's counsel never questioned Appellee Reinisch about: what speech by Plaintiff Appellee Reinisch was even aware of before the restriction; how Appellee Reinisch tailored the restriction; or what motivated the restriction (beyond confirming the content of the January 13, 2017 letter). However, during the "cross" of Appellee Reinisch, the jury did get to see the

---

[4] While Plaintiff's January 9, 2017 conduct arguably satisfies each of the elements of "trespass" (N.Y. Penal L. §§ 140.00 and 140.03), it is notable that the measured response of Appellees Carmello and Reinisch—acting as in their capacities as educational administrators (not law enforcement)—pursued only a preventative strategy designed to protect students.

actual surveillance video of Plaintiff's alarming January 9, 2017 behaviors, and the jury heard Appellee Reinisch's testimony regarding these material issues. To that end, Appellee Reinisch testified as follows:

- That he observed the surveillance video of Plaintiff's behavior outside of the girls' locker room on the evening of January 9, 2017, recalling that Plaintiff "*parked right in front of the girls' locker room, which I found to be unbelievably inappropriate . . . .*";

- That his impression of Plaintiff's January 9, 2017 behavior, captured on the surveillance video, in his capacity as the Troy CSD high-school Athletic Director, was that it "*was very, very disturbing, to say the least.*";

- Regarding his responsibility to protect the safety of the student athletes, that "*when I saw what went on in that video, I had never seen anything like that. And for a parent to come into a building after hours uninvited and to assemble certain members of the team . . . and to do what he did . . . .*"

Similarly, Appellee Carmello also described how his viewing of the surveillance video depicting Plaintiff's disturbing January 9, 2017 behaviors and how seeing Appellee Carmello's own son walk through the cafeteria while Plaintiff had assembled the girls' basketball team members impacted his thinking and prompted him to respond, testifying during the trial that:

9

- "*Seeing my son there made me realize that all the students in that cafeteria and the school district rely on me to keep them safe and that the parents of those girls, just like me as a parent . . . had no idea that they were having that meeting with Mr. Frierson at that time.*"

In light of the foregoing facts, it is truly remarkable that Plaintiff now attempts to argue before this Court that the jury's September 11, 2020 verdict was somehow against the weight of the evidence. In contrast, the undisputed evidence overwhelmingly confirms that the jury's verdict in favor of Appellees was sound, legitimate, and completely rational. Accordingly, the decisions reached by the lower court and the trial jury must be affirmed, in all respects, as a matter of law.

## ARGUMENT SUMMARY

After nearly five and a half years of unsuccessfully litigating his claims against Appellees (and the former Defendants), this Court should follow the sound precedent reached by the lower court's March 15, 2018 and June 5, 2019 decisions,[5] as well as the trial jury's proper September 11, 2020 defense verdict. With regard to Appellees' Cross-Appeal, the record before this Court confirms that both Plaintiff's Original and Amended Complaints violated FRCP Rule 8 (as the lower court correctly held), and never asserted any "freedom of assembly" claim—let alone a *plausible* "freedom of assembly" claim—against Appellees. To such end, a

---

[5] Exclusive of the narrow issues that encompass Appellees' Cross-Appeal to this Court.

review of the record shows that Plaintiff's Complaints are incomprehensible and actually virtually unreadable. Plaintiff's clearly unpled "freedom of assembly" claim should have therefore never survived beyond the pleadings stage and beyond Appellees' Rule 12(b)(6) motion to dismiss.

Likewise, to the extent that the lower court considered an unpled "freedom of assembly" claim (unbeknown to Appellees) at the FRCP Rule 56 summary judgment stage, Plaintiff's unpled "freedom of assembly" claim should have been dismissed, in light of the dispositive evidence presented by Appellees in support of their motion, as a matter of law. Notably, neither the lower court's March 15, 2018 or June 5, 2019 decisions engaged in any explicit analysis of a First Amendment Freedom of Assembly claim, thus Appellees continued to remain unaware of the existence of any such unpled claim until a pre-trial conference that was held merely **four (4) days** before the commencement of the scheduled September 8, 2020 jury trial. As explained below, even the lower court was uncertain as to the existence of an unpled "freedom of assembly" claim at the time of the September 4, 2020 pre-trial conference, but ultimately erroneously permitted the trial jury to be instructed on and charged with this unpled claim over Appellees' counsels' objections. Appellees' lack of notice of an unpled freedom of assembly claim, as well as the fundamentally defective nature of such unpled claim (in clear violation of FRCP Rule 8), compel the reversal of the lower court's decisions to the limited extent sought herein.

11

Plaintiff's appeal suffers from a host of fatal deficiencies that require the lower court's challenged decisions and the jury's properly-reached trial verdict to be affirmed in all respects. First, because Plaintiff is not challenging the dismissal of the only First Amendment claim that he actually advanced against Appellees in his Complaints (i.e., the retaliation claim), Plaintiff does not even have an appeal before this Court. In addition to this fatal fact, Plaintiff's inability to satisfy the stringent requirements of Rule 50 further compel the dismissal of his appeal. Perhaps most obvious is Plaintiff's unwillingness to accept the fact that the jury simply did not credit Plaintiff's presentation at trial and, when considering all of the trial testimony and proffered evidence, the jury properly returned a verdict for Appellees. Plaintiff's post-trial remorse and unrelenting refusal to accept the outcome of a jury trial that Plaintiff demanded cannot support a basis for a directed verdict under Rule 50(b).

Simply stated, the evidence at trial overwhelmingly demonstrated that Appellees Reinisch and Carmello implemented the January 13, 2017 restriction in direct response to their discovery of Plaintiff's disturbing misconduct with members of the Troy CSD girls' basketball team,[6] which alarming behaviors included, *inter alia*: (a) gaining unauthorized access into the Troy CSD high-school building by sneaking in through a side door, after school hours, and when the main entrances to

---

[6] Captured on the Troy CSD surveillance security footage in the high-school building where Plaintiff's alarming January 9, 2017 conduct took place.

the building were locked; (b) violating Troy CSD's security procedures, visitors' policies, and the Building Use Policy; (c) waiting outside of the girls' basketball team's locker room when no other parents or school officials were present; (d) assembling the girls, through a back hallway of the building and into the school cafeteria, to hold a meeting with the female athletes, unbeknown to the girls' parents; (e) engendering divisiveness and tensions among the girls' basketball team by encouraging, *inter alia*, a boycott during the girls' next upcoming basketball game; (f) hugging and kissing members of the girls' basketball team; (g) upsetting at least some of the parents of the girls' who were a captive audience to Plaintiff's inappropriate conduct; and (h) causing emotional and psychological injuries to, at least, one of the girls ("MB") on the basketball team, ruining MB's relationships with at least some of her team members, and causing MB to seek counseling as a result of Plaintiff's inappropriate conduct on the evening of January 9, 2017 (*see* JA-1391, 1422-23, 1427, 1438-39, 1508, 1522-23, 1525, 1528) (SA-55).

Further exemplifying the baseless nature of Plaintiff's alleged "free speech" claim, the trial evidence further demonstrated, *inter alia*, that: (a) Appellees Reinisch and Carmello were not even aware of the content of Plaintiff's purported "speech" on the audio-less surveillance video footage depicting Plaintiff's January 9, 2017 misconduct with the girls' basketball team; and (b) Plaintiff had engaged in the same "speech" or "expression" (i.e., Plaintiff's criticisms of the high-school basketball

coach) **for years** prior to Plaintiff's January 9, 2017 misconduct, and Appellees (including the former Defendants) never once implemented any restrictions or imposed repercussions on Plaintiff throughout the **years** of Plaintiff's criticisms. In sum, the trial evidence confirmed that Appellees responded with the sole objective to protect the health, safety, and well-being of the students in their care.

Plaintiff's remaining issues on appeal regarding his implied Procedural Due Process and *Monell* claims are likewise legally infirm. The lower court correctly dismissed the implied due process claim on the grounds that the very narrowly-tailored restriction plainly did not obstruct Plaintiff's rights to the care, custody, and upbringing of his daughter. Regarding Plaintiff's *Monell* claim, the lower court properly dismissed same at the summary judgment stage, correctly concluding that Plaintiff failed to show any formal policy or custom of Troy CSD that allegedly violated Plaintiff's constitutional rights and, moreover, that Plaintiff's alleged *Monell* claim was inherently flawed because it involved the *discretionary* decision of a *decision-maker*, as opposed to a *binding policy* established by *final policymakers*. Accordingly, Plaintiff's appeal is defective for a multitude of reasons, and the decisions reached by the lower court and the trial jury must therefore be affirmed, in the entirety, as a matter of law.

## <u>APPLICABLE STANDARDS OF REVIEW</u>

**i.      Legal Standard for FRCP Rule 12(b)(6):**

A Circuit Court of Appeals reviews *de novo* the grant or denial of a motion to dismiss a complaint for failure to state a claim. *See e.g.*, *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009). Questions of qualified immunity are also reviewed *de novo* by the Circuit Courts. *See e.g.*, *Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020); *Charles W. v. Maul*, 214 F.3d 350, 356 (2d Cir. 2000). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A Complaint that merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678. The Supreme Court in *Ashcroft* concluded that a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *See id*. Further, *Ashcroft* directed that "under [FRCP] 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. The lower court's March 15, 2018 decision (SA-1) dismissing Plaintiff's implied Fourteenth Amendment Procedural Due Process claim should be affirmed since Plaintiff had clearly failed to state any such plausible cause of action against Appellees. Moreover, to the extent that the lower court construed Plaintiff's

incomprehensible pleadings to have asserted an unpled "freedom of assembly" claim, the lower court erred in doing so and by permitting such unpled claim to survive past the pleadings stage on Appellees' FRCP Rule 12(b) motion to dismiss.

### ii.    Legal Standard for FRCP Rule 50(b):

The standard provided in FRCP Rule 50 is exceedingly rigorous and considered an extraordinary basis for relief. *See e.g.*, *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150-51 (2000); *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). "That burden is 'particularly heavy' where, as here, 'the jury has deliberated in the case and actually returned its verdict' in favor of the non-movant." *Cash*, 654 F.3d at 333 (quoting *Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 248 [2d Cir. 2005]). A motion made under FRCP Rule 50(b) will be denied unless the court determines that there is an absence of **any** legally sufficient evidentiary basis by which the non-movant could have procured a favorable verdict. *See e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 535 (S.D.N.Y. 2011). As the lower court properly held in its decision on Plaintiff's October 9, 2020 post-trial motion, "[a] court may only grant a Rule 50(b) motion if there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against it.'" (*See* SA-51) (quoting *Wiercinski v. Mangia 57, Inc.*,

16

787 F.3d 106, 112 [2d Cir. 2015]).  In short, this Circuit has repeatedly recognized that, following a jury verdict, an FRCP Rule 50 motion may only be granted if the court, viewing all of the evidence in the light most favorable to the non-movant, and drawing all inferences in the non-movant's favor, concludes that "a reasonable juror would have been ***compelled*** to accept the view of the moving party."  *See e.g.*, *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) (emphasis in original).  This is clearly not the case in the instant matter.

Moreover, it is well-established that Rule 50(b) motions are "'limited to those grounds that were specifically raised in the prior Rule 50(a) motion [before the case is submitted to the jury]'; the movant is not permitted to add new grounds after trial."  *See e.g.*, *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998) (quoting *McCardle v. Haddad*, 131 F.3d 43, 51 [2d Cir. 1997]).  Courts in this Circuit have routinely denied Rule 50(b) motions predicated upon the movant's failure to preserve, as the requirements in Rule 50(a) may not be excused.  *See e.g.*, *Bracey v. Bd. of Educ.*, 368 F.3d 108, 117 (2d Cir. 2004).  Lastly, the U.S. Supreme Court has long held that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  *See Reeves*, 530 U.S. at 535; *Zellner*, 494 F.3d at 333.  The

17

court reviewing an FRCP Rule 50 motion "cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury." *See Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 112 (2d Cir. 2015). As fully-demonstrated herein, Plaintiff's FRCP Rule 50 motion does not even remotely satisfy the heavy burden that he is required to prove to entitle him to the extraordinary relief of setting aside the trial jury's properly-reached verdict.

### iii.    Legal Standard for FRCP Rule 56(a):

Plaintiff appeals the lower court's June 5, 2019 decision on Appellees' summary judgment motion only to the extent that the lower court dismissed Plaintiff's legally defective *Monell* claim against the Troy CSD. As this Court recently affirmed in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd in Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see also Trostle v. New York*, 2016 U.S. Dist. LEXIS 38370, *16 (N.D.N.Y. 2016) (Chief J. Suddaby); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). If the movant satisfies its burden, the nonmoving party must offer specific evidence showing that a genuine issue of material fact warrants a trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Importantly, the bald assertion of some alleged factual dispute

will not defeat a properly supported motion for complete summary judgment. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994). Further, it is well-established that "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). An Appellee Court reviews a District Court's decision on a summary judgment motion *de novo*. *See Wagner*, 489 F. App'x at 500. Similarly, to the extent that the lower court construed Plaintiff's unreadable pleadings to have asserted an unpled "freedom of assembly" claim on Appellees' FRCP Rule 56(a) summary judgment motion, the lower court erred in declining to dismiss such unpled claim in light of the dispositive record evidence that was proffered by Appellees.

## **LEGAL ARGUMENT**

### **POINT I**

### **THE LOWER COURT ERRED IN CONSTRUING PLAINTIFF'S INCOMPREHENSIBLE PLEADINGS TO HAVE ASSERTED AN UNPLED CLAIM OF FIRST AMENDMENT FREEDOM OF ASSEMBLY AGAINST APPELLEES**

As a threshold matter, neither Plaintiff's virtually unreadable Original Complaint (USDC NDNY ECF No. 1) or Operative Complaint (JA-24) alleged a First Amendment Freedom of Assembly claim against any Appellee (or former Defendant), and the lower court erred when it permitted the jury to be charged with such cause of action during the September 8, 2020 trial. For one, both of Plaintiff's Complaints were held to be patent violations of FRCP Rule 8 (*see* SA 4-5), and the

19

only (unspecified and purely conclusory) reference that the pleadings made to the "First Amendment" was the word "retaliation"—framed in the context of purported "sexual harassment" (JA-30)—although the Complaints fail to assert: 1) whose rights were violated; 2) how these rights were violated; 3) when these rights were violated; and 4) by whom these rights were violated (USDC NDNY ECF No. 1 at 4; JA-30). Apart from "copying and pasting" portions of the language of the First Amendment from various unknown sources, Plaintiff's illegible Complaints are completely devoid of **any** factual allegations that frame a plausible freedom of assembly claim (*see generally* USDC NDNY ECF No. 1; JA 25-67). In fact, Plaintiff's pleadings overtly concede that Plaintiff himself was unaware of what claims, if any, Plaintiff was attempting to advance against Appellees; remarkably **asking the lower court**, in Plaintiff's Operative Complaint: "**Under what Law are Plaintiff's protected?**" (*see* JA-27) (emphasis in original).

Moreover, Plaintiff's counsel—who have represented Plaintiff in this action since 2018 (ECF No. 74)—failed to amend Plaintiff's incomprehensible pleadings and even failed to make any application to the lower court seeking leave to amend the Operative Complaint to bring a novel claim of First Amendment Freedom of Assembly. As such, it is axiomatic that Plaintiff should never have been permitted to pursue this unpled "freedom of assembly" claim at the pleadings stage following Appellees' FRCP Rule 12(b) motion to dismiss, let alone throughout the course of

20

discovery, beyond Appellees' summary judgment motion and, ultimately, at Plaintiff's unsuccessful jury trial.[7]  Remarkably, while the record evidence is clear that Plaintiff completely failed to pled a "freedom of assembly" claim, and it is undisputed that Plaintiff's counsel did not undertake any efforts to plead such claim against Appellees Reinisch and Carmello, Plaintiff's unpled freedom of assembly claim is the only claim under the First Amendment that Plaintiff currently attempts to challenge on appeal (*see* ECF No. 54 at 9 n.1, 11-12).[8]  Thus, Plaintiff's appeal is clearly baseless and must be dismissed, in all respects, as a matter of law.

This Circuit has long-recognized that "the basic requirements of Fed. R. Civ. P. 8 apply to self-represented and counseled plaintiffs alike."  *See e.g.*, *Wynder v.*

---

[7] Because Plaintiff does not challenge the jury verdict properly dismissing his First Amendment Retaliation claim on appeal (ECF No. 54 at 9), Appellees will refrain from briefing this issue in detail as set forth in Appellees' Notice of Cross-Appeal (SA-47; ECF No. 6).  Nevertheless, based upon the record before this Court, Appellees submit that: 1) the lower court erred in declining to dismiss Plaintiff's First Amendment Retaliation claim on Appellees' FRCP Rule 12(b) motion to dismiss due to, *inter alia*, Appellees' patently defective pleadings and failure to state a plausible claim; or 2) alternatively, erred in not dismissing Plaintiff's First Amendment Retaliation claim on Appellees' FRCP Rule 56 summary judgment motion, in light of the voluminous record evidence demonstrating that Plaintiff completely failed to satisfy his burden in proving a causal connection between an allegedly adverse action and Appellees' purportedly retaliatory "motives" in allegedly chilling Plaintiff's "speech." *See e.g.*, *Oliveras v. Saranac Lake Cent. Sch. Dist.*, 2014 U.S. Dist. LEXIS 44603, *60 (N.D.N.Y. 2014); *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008).  To that end, the record evidence proffered in Appellees' summary judgment motion to the lower court was substantially the same evidence that resulted in a jury verdict for Appellees (SA 57-59).  Accordingly, even if Plaintiff's retaliation claim could have somehow survived the motion to dismiss stage (which it could not in light of the defective pleadings), Plaintiff's retaliation claim should have been dismissed by the lower court in light of the dispositive evidence presented in Appellees' motion for summary judgment.

[8] After nearly five and a half (5.5) years of prosecuting Plaintiff's baseless First Amendment Retaliation claim against Appellees and the former Defendants, Plaintiff's failure to challenge his retaliation claim on appeal serves as a tacit admission that Plaintiff's allegations of "retaliatory motive" are—and have always been—completely meritless.

*McMahon*, 360 F.3d 73, 80 n.11 (2d Cir. 2004). At its core, "[t]he key to Rule 8(a)'s requirements is whether adequate notice is given." *Id.* at 79. Notice is only deemed to be sufficient when it enables the opposing party to answer, defend, and prepare for trial with respect to such specific claim(s). *See e.g.*, *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). Notably, notwithstanding the legally-defective nature of Plaintiff's Complaints, what Plaintiff's more than fifty (50) pages of pleadings do demonstrate is Plaintiff's ability to advance a litany of accusations against Appellees, none of which included any factual allegations that Plaintiff's purported "right to assemble" at Troy CSD girls' high school basketball practices and games was infringed (JA 24-67). Even assuming, *arguendo*, that Plaintiff could have brought a freedom of assembly claim in his Complaints and that Appellees were adequately notified of same (two fatal facts that indisputably did not occur), it was Plaintiff's decision (as opposed to Plaintiff's attorneys or the lower court) to determine whether Plaintiff desired to advance such cause of action against Appellees; which Plaintiff failed to do. In light of the above, Plaintiff's freedom of assembly claim is fatally defective and must be dismissed for multiple reasons.

Importantly, despite the lower court concluding **at the pleadings stage** on March 15, 2018, that: "***[i]n this case, the amended complaint is not simple, concise, or direct, as required by Rule 8. Instead, Plaintiff's forty-four page amended***

*complaint is incoherent, rambling, and nearly unreadable*" (SA-4), the lower court notified Appellees, for the first time during a pre-trial conference held on September 4, 2020—**four (4) days prior to the start of the jury trial**—that the lower court intended to charge the jury on claims for First Amendment retaliation **and** on an unpled "freedom of assembly" claim (*see* JA-19, 1119, 1122-1124). During this September 4, 2020 pre-trial conference, the lower court even acknowledged the court's own uncertainty as to whether an unpled "freedom of assembly" claim was being litigated by Plaintiff, stating the following merely a few days before the jury trial commenced:

- "*To me [the lower court], it's, you know, practically, it's more of a retaliation case then it is anything else. But that's why I'm [the lower court is] confused.*" (JA 1123-1124).

- "*Personally, I [the lower court] think it's purely a retaliation case, I mean that's the way this case has unfolded.*" (JA 1128-1129).

- "*As I [the lower court] say, there was genuine confusion on my part as to what claim or claims were going to the jury.*" (JA 1135).

The lower court erred in its decision made during the parties' September 4, 2020 pre-trial conference (i.e., allowing the jury charge and jury verdict form to include a right to assembly claim), since Appellees were obviously not afforded FRCP Rule 8(a)'s notice requirements to enable Appellees to sufficiently defend against such claim from the time that Plaintiff commenced this action on January 13, 2017 (USDC NDNY ECF No. 1).

23

In addition, neither the lower court's March 15, 2018 decision on Appellees'
motion to dismiss (SA-1) or the lower court's June 5, 2019 decision on Appellees'
motion for summary judgment (SA-15) specifically addressed Plaintiff's unpled
"freedom of assembly" claim, nor did such decisions apply and/or analyze the
applicable law with respect to same (*see generally* SA 1-14; SA 15-28).  Appellees
therefore remained unaware that Plaintiff maintained an unpled "freedom of
assembly" claim throughout Appellees' motion practice before the lower court (JA-
68, 75).[9]   In fact, the lower court's March 15, 2018 decision on Appellees'
dispositive motion focused on the appropriate forum analysis underlying Plaintiff's
First Amendment **retaliation** claim (as opposed to freedom of assembly), wherein
the lower court held that: 1) "*in this case, the scope of the ban against Plaintiff is
not entirely clear from the face of the complaint*"; and 2) "*[a]t this stage in the
litigation, the Court cannot distinguish the facts alleged in [Plaintiff's] amended
complaint from the Second Circuit's holding in [Johnson v.] Perry.*"  (SA-8, 10).
While the lower court mentioned that the *Johnson v. Perry* case involved a right of
assembly claim in the lower court's recitation of the facts in *Perry* (SA-9), the lower
court's March 15, 2018 decision failed to specify that the lower court was

---

[9] In fact, the record reveals that the only instance where the lower court briefed the issue of
Plaintiff's unpled freedom of assembly claim was **after** the jury reached a verdict in favor of
Appellees and the lower court issued a subsequent Decision and Order, dated September 27, 2021,
on Plaintiff's post-trial motion wherein Plaintiff unsuccessfully moved for a new trial (SA-53).

interpreting Plaintiff's Operative Complaint to have asserted a cause of action for freedom of assembly (SA 1-14). As indicated above, the lower court actually emphasized the obfuscated nature between the facts in Plaintiff's case and those in *Perry*, largely due to the incomprehensibility of Plaintiff's pleadings (SA-6, 10). In any event, a reading of the *Perry* decision makes clear that: "*[t]he Complaint [in Perry] . . . alleged that Perry's actions violated Johnson's First Amendment right of assembly*"—allegations that were undisputedly not asserted in Plaintiff's incoherent Complaints. *Compare Johnson v. Perry*, 859 F.3d 156, 164 (2d Cir. 2017) *with* (USDC NDNY ECF No. 1; JA 24-67).

In sum, the lower court committed reversible error when it: 1) failed to provide Appellees with explicit notice, until the eve of trial, that the lower court was construing Plaintiff's unreadable Complaints to have asserted a claim for First Amendment Freedom of Assembly; 2) permitted Plaintiff's unpled freedom of assembly claim to survive beyond the motion to dismiss stage; 3) permitted Plaintiff's unpled freedom of assembly claim to survive beyond the summary judgment stage; and 4) permitted the jury charge and jury verdict form in include a right to assembly claim over the stanch objections of defense counsel during the September 8, 2020 jury trial (*see* JA-1568, 1577, 1581). Accordingly, this Court should reverse the prior March 15, 2018 and June 5, 2019 decisions of the lower

court to the extent indicated herein (ECF No. 6), and confirm the dismissal of Plaintiff's unpled freedom of assembly claim as a matter of law.

## POINT II

### PLAINTIFF'S APPEAL SEEKING A DIRECTED VERDICT ON HIS UNPLED FREEDOM OF ASSEMBLY CLAIM UNDER FRCP RULE 50(b) MUST BE REJECTED AS A MATTER OF LAW

In addition to the multiple fatal arguments that Appellees assert herein regarding Plaintiff's unpled freedom of assembly claim (*see supra* POINT I), Plaintiff's appeal seeking the extraordinary relief of setting aside the jury's verdict—in a jury trial that Plaintiff demanded—is procedurally barred and premised upon nothing more than Plaintiff's refusal to accept that the jury did not credit Plaintiff's presentation at trial. *See* FRCP Rule 50(a) and (b). On appeal to this Court, Plaintiff fails to provide any support for his argument that the jury's properly reached verdict in favor of Appellees Reinisch and Carmello on Plaintiff's unpled freedom of assembly claim should be reversed other than Plaintiff's regurgitation of his same unsuccessful arguments that Plaintiff merely "copied and pasted" from his October 9, 2020 post-trial brief to the lower court (*see* USDC NDNY ECF No. 132-3 at 27-37). Of course, Plaintiff's post-verdict remorse is not a sufficient basis for bringing a FRCP Rule 50(b) motion for a directed verdict, and Plaintiff has completely failed to satisfy the stringent standard that a movant is required to prove under FRCP Rule

50(b) in order to overturn a jury verdict after Plaintiff has already been provided with a full and fair opportunity to be heard at trial.

As set forth above, it is well-settled in this Circuit that the grounds upon which a party may rely in a Rule 50(b) motion are "'limited to those grounds that were specifically raised in the prior Rule 50(a) motion [before the case is submitted to the jury]'; the movant is not permitted to add new grounds after trial." *See e.g.*, *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998) (quoting *McCardle v. Haddad*, 131 F.3d 43, 51 [2d Cir. 1997]).  As the lower court properly held in its decision on Plaintiff's post-trial motion, "[a] court may **only** grant a Rule 50(b) motion if there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against it.'" (SA-51) (quoting *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 112 [2d Cir. 2015]).  As the record before this Court reveals, the evidence deduced at trial incontrovertibly shows that the jury verdict was sound, well-reasoned, and that the overwhelming weight of the evidence made a defense verdict proper.

## A. The Trial Evidence Substantially Demonstrated That The January 13, 2017 Restriction Was Both Reasonable And Viewpoint Neutral.

The parties do not dispute that, when a school opens itself up for specified activities such as athletic games, the school is provisionally considered to be a

limited public forum. *See Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017) (ECF No. 54 at 40-41). It is also undisputed that limitations on speech in a limited public forum need only be reasonable and viewpoint neutral. *See Hotel Emps. & Rest Emps. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534, 545, 553 (2d Cir. 2002); *Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617, 626 (2d Cir. 2005); (ECF No. 54 at 41). Nevertheless, the U.S. Supreme Court has made clear that "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985).

    **i.   Reasonableness:**

Plaintiff simply refuses to accept that the jury rejected his fabricated theories at trial and, instead, properly determined that the January 13, 2017 restriction was based upon Plaintiff's January 9, 2017 misconduct, whereby it was proven that Plaintiff: (a) gained unauthorized access into the Troy CSD high-school building by sneaking in through a side door, after school hours, and when the main entrances to the building were locked; (b) violated Troy CSD's security procedures, visitors' policies, and the Building Use Policy; (c) was waiting outside of the girls' basketball team's locker room when no other parents or school officials were present; (d)

assembled the girls, through a back hallway of the building and into the school cafeteria, to hold a meeting with the female athletes, unbeknown to the girls' parents; (e) engendered divisiveness and tensions among the girls' basketball team by encouraging, *inter alia*, a boycott during the girls' next upcoming basketball game; (f) was observed hugging and kissing members of the girls' basketball team; (g) upset at least some of the parents of the girls' who were a captive audience to Plaintiff's inappropriate conduct; and (h) caused emotional and psychological injuries to, at least, one of the girls ("MB") on the basketball team, ruined MB's relationship with at least some of her team members, and caused MB to seek counseling as a result of Plaintiff's inappropriate behaviors the evening of January 9, 2017 (JA-1391, 1422-23, 1427, 1438-39, 1508, 1522-23, 1525, 1528) (SA-55). In light of all of the foregoing, the trial jury rationally concluded that the January 13, 2017 restriction was reasonable and viewpoint neutral.

As the trial evidence demonstrated, every witness who was involved in the investigation of Plaintiff's alarming January 9, 2017 misconduct or the decision to limit his access to future Troy CSD athletic events (where Plaintiff could further exploit other captive audiences of student athletes), confirmed that: 1) to the extent they were even aware of Plaintiff's criticisms, Appellees responded positively by meeting with Plaintiff and offering to set up meetings with him and his daughter on multiple occasions; 2) several other parents of Troy CSD student athletes engaged

29

in the same critical behavior that Plaintiff engaged in (i.e., critiques involving the girls' varsity basketball team) without any consequences from Appellees; 3) with the exception of the coaching critique that Plaintiff offered to Appellee Carmello on January 5, 2017, neither Appellee Reinisch or Carmello were even aware of the content of Plaintiff's unspecified "speech"; and 4) there were never any discussions or consideration by Appellees about limiting Plaintiff from school athletic events until **after** Appellees discovered that Plaintiff had trespassed into the secured high-school building the evening of January 9, 2017 and engaged in inappropriate and alarming behaviors with the Troy CSD girls' basketball team—at such time, and only at such time, did Appellees respond to Plaintiff's disturbing conduct. This last factor is arguably the most critical, since Plaintiff and his counsel appear to continue to be under the misconception that because Plaintiff was critical of the Troy CSD basketball coach **for years—**without facing any "repercussions" or "restrictions" from Appellees (JA-40; SA 58-59)—the First Amendment magically immunizes Plaintiff from the consequences of his alarming January 9, 2017 misconduct with the girls' basketball team. This theory by Plaintiff is, of course, not the law, as it was Plaintiff's burden to offer credible evidence—not speculation or mere conjecture—that there was a causal connection between Plaintiff's alleged "speech" and the January 13, 2017 restriction; a burden which Plaintiff obviously failed to

carry and does not even remotely constitute a basis for the extraordinary relief sought under FRCP Rule 50(b) (*see also* SA-55).

Plaintiff likewise refuses to accept the fact that the jury found that the January 13, 2017 restriction was narrowly-tailored to achieve a compelling interest of the Troy CSD. For one, while Plaintiff's appeal (disturbingly) continues to ignore the significance of Plaintiff's January 9, 2017 misconduct with the Troy CSD girls' high-school basketball team, it cannot be disputed that the Troy CSD has a compelling interest in protecting its student athletes from harm (including psychological and emotional harm), and maintaining secure buildings to promote the safety of public-school children. Moreover, it is undisputed that the January 13, 2017 restriction implemented by Appellees Reinisch and Carmello was narrowly-tailored to achieve the goal of preventing Plaintiff from gaining future access to the Troy CSD female athletes at the specific times and places when the girls' participation in school athletics made them a "captive audience" and thus vulnerable to being further exploited by Plaintiff (JA-1508). Notably, Plaintiff's inappropriate actions with the girls' basketball team the evening of January 9, 2017 are not even protected forms of "speech" under First Amendment; where Plaintiff accessed/assembled the female athletes at a time where the school building was closed to the public during the girls' varsity basketball practice. *See e.g.*, *Carey v. Brown*, 442 U.S. 455, 470-71 (1980) ("The Supreme Court has held that no mandate

31

in our Constitution leaves States and governmental units powerless to . . . protect the public from the kind of boisterous and threatening conduct that disturbs the tranquility of buildings that require peace and quiet to carry out their functions, such as . . . schools.") (internal citations omitted).

Curiously, Plaintiff argues that the absence of a location-based restriction somehow helps his cause; but that argument simply misses (or ignores) the central purpose of the restriction—which Appellee Reinisch and Carmello testified was to protect Troy CSD student-athletes (not a building) (JA-1381, 1388, 1391, 1409-10, 1422-23, 1427, 1438-39, 1508, 1522-23, 1525, 1528). The trial evidence made clear that while Plaintiff's January 9, 2017 misconduct certainly included trespassing upon school property (i.e., the unauthorized entry into the high-school building); that physical trespass was not the priority for Appellees, as evidenced by the fact that they never called the police and did not restrict Plaintiff's legitimate access to the high-school building where Plaintiff's daughter attended as a senior in the Spring of 2017. As Plaintiff concedes on appeal, with the exception of gaining access to the members of the girls' basketball team during the girls' practices and games, Plaintiff was free to participate in all other events that other Troy CSD parents could do at the Troy CSD campus, including, but not limited to being on school property, visiting the school campus during the hours that the school was open, attending parent-teacher conferences, and participating in any other parent/student-related

activities (e.g., graduation and other school-sponsored events) (ECF No. 54 at 44-45). Plaintiff was also free to express himself in any public fora maintained by the Troy CSD (e.g., Board of Education meetings, assemblies, etc.); further exemplifying that the restriction was narrowly-tailored to specifically prevent a reoccurrence of Plaintiff's January 9, 2017 misconduct with the girls' basketball team. In light of the foregoing facts, the trial jury reasonably concluded that the January 13, 2017 restriction was reasonable.

Lastly, Plaintiff's and his counsels' obfuscated theory that the lower court "conflated" his freedom of assembly claim with his retaliation claim is fundamentally flawed. First, Plaintiff and his counsel contradict their own novel "conflation" argument on appeal, as Plaintiff's counsel previously represented to the lower court, on several occasions during the parties' September 4, 2020 pre-trial conference, that the unpled freedom of assembly claim is "*inextricably linked with the retaliation [claim]*." (JA-1120, 1124). Now exhibiting post-trial remorse, Plaintiff and his attorneys attempt to backtrack from the ineffective tactics they employed at trial that resulted in a verdict that Plaintiff and his counsel are simply unwilling to accept. In any event, it cannot be disputed that, to ascertain whether the January 13, 2017 restriction was reasonable, the underlying bases concerning *why* the restriction was implemented (e.g., Plaintiff's unauthorized access into the high-school building, exploitation/harm caused to members of the girls' basketball team,

etc.) must be considered in order to resolve such question. In fact, Plaintiff underscores that precise notion (directly belying the other points he attempts to make in his brief) in Plaintiff's theory regarding viewpoint neutrality (*see* ECF No. 54 at 48). Plaintiff's attempts to "relabel" the already-proven facts at trial are, frankly, illogical and fail to alter the conclusion that the reasons underlying Appellees' January 13, 2017 restriction were patently reasonable under the circumstances. Most importantly, the jury rationally concluded that the January 13, 2017 restriction was reasonable in light of all the credible evidence presented during the trial.

### ii. The Inapplicability of *Huminski v. Corsones*:

Plaintiff's appeal also relies heavily upon his argument that this case is somehow like *Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2004)—which comparison is flawed for multiple reasons. First, the only actions that preceded the categorical ban in *Huminski* were expressive activities by the plaintiff, as there was no trespass captured on surveillance video or actual direct psychological and emotional harms caused to a captive audience of minor female athletes. Second, the categorical ban in *Huminski* applied to all presumptively public judicial proceedings conducted at a public court complex, including proceedings that were unrelated to any risk or threat that was presented by the Plaintiff in that case. *Id.* at 87-88. In contrast, the much narrower and targeted restriction imposed on Plaintiff in this case did not even remotely constitute a "categorical ban" to accessing any building or

34

place, but rather, was narrowly tailored to prevent a repeat of Plaintiff's January 9, 2017 misconduct. Most importantly, the ban in *Huminski* was plainly content-based as it was prompted by the expressive activities (e.g., protesting, letters) of the plaintiff, whereas in the present case, Plaintiff failed to prove that the January 13, 2017 restriction was content-based, retaliatory, or punitive; and the jury reasonably concluded that it was Plaintiff's alarming January 9, 2017 misconduct that prompted Appellees reactions to protect the minor student-athletes in their care.

As the trial evidence in this case demonstrated, the context within which the January 13, 2017 restriction was imposed upon Plaintiff was completely distinguishable from the ban in *Huminski*. Obviously, the public courthouse and public court proceedings in *Huminski* are open to and serve the public at large, whereas public school districts primarily serve children, and their facilities are rarely open to the general public. In fact, most Troy CSD athletic activities (i.e., closed sports' practices) are neither public nor limited public forums and, akin to most public schools, Troy CSD is predominately a non-public forum (*see* SA-8). In *Huminski*, the ban applied to all proceedings in an entire building which effectively meant the Plaintiff was excluded from public judicial proceedings conducted at least five days a week for approximately 9-10 hours every day. In contrast, Plaintiff was only limited access to very specific spaces (e.g., gyms) at very specific times (e.g., two-hour games) that took place periodically. While Plaintiff's counsel attempt to

argue that the ban was allegedly "continual," they ignore Plaintiff's trial testimony (which was obviously influenced by his limited deposition testimony) that plainly stated the restriction only limited Plaintiff for the 8-10 games that he may have attended. Lastly, in the present case, the trial evidence made clear that the January 13, 2017 restriction was prompted by the discovery of Plaintiff's alarming January 9, 2017 misconduct that, inter alia, actually injured a student as well as violated multiple explicit TCSD policies; whereas no such facts were present in *Huminski*. Accordingly, *Huminski* is clearly inapposite to the instant matter and the lower court properly disregarded it.

### iii. Viewpoint-Neutrality:

Plaintiff similarly fails to satisfy the rigorous standard under FRCP Rule 50(b) with respect to his argument that the restriction was purportedly not viewpoint neutral. First, and perhaps most importantly, the jury has already properly determined that Appellees were not motivated by the content of Plaintiff's alleged "speech" during Plaintiff's inappropriate January 9, 2017 meeting with the girls' basketball team, but instead, reacted to Plaintiff's disturbing behaviors and the harms suffered by the female student-athletes as a result of Plaintiff's misconduct on such date. The fact that the jury has already resolved this factual issue at trial is fatal to Plaintiff's unpled freedom of assembly claim, and Plaintiff's counsels' self-serving, post-trial speculation cannot alter that conclusion. More specifically, the trial

36

evidence demonstrated that: 1) Appellees Reinisch and Carmello were not even aware of the content of Plaintiff's alleged "speech" on January 9, 2017; 2) the Troy CSD surveillance video capturing Plaintiff's January 9, 2017 misconduct did not even contain audio, thus Appellees Reinisch and Carmello were not aware of Plaintiff's purported "speech" on such date (as opposed to Plaintiff's inappropriate behaviors with members of the girls' basketball team, which were captured clearly on the surveillance video); 3) Plaintiff had engaged in the same "expression" of being critical of the Troy CSD girls' basketball coach **for years** prior to the January 13, 2017 restriction, without any consequences or restrictions ever being implemented by Appellees (JA-40; SA 58-59); 3) Plaintiff trespassed on school property, after school hours, and met with members of the girls' basketball team without obtaining prior permission from the girls' parents or school officials; 4) Plaintiff violated Troy CSD's security procedures, visitors' policies, and the Building Use Policy; and 5) Plaintiff psychologically and emotionally harmed at least some female student-athletes and their parents as a result of Plaintiff's alarming January 9, 2017 misconduct.

Each one of the aforementioned facts is independently fatal to Plaintiff's unpled "freedom of assembly" claim, and Plaintiff's argument regarding viewpoint neutrality falls far short of establishing that there was "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the

37

result of sheer surmise and conjecture." (ECF No. 54 at 48-49); *Wiercinski*, 787 F.3d at 112. The only supposition and conjecture are Plaintiff's incessantly evolving theories throughout the proceedings in the lower court and now on appeal. In fact, while Plaintiff disingenuously attempts to argue on appeal that the jury's findings were somehow erroneous, Plaintiff's counsel **actively avoided** questioning Appellees on, *inter alia*, what information Appellees were aware of prior to implementing the restriction, and what were the reasons/motivation that Appellees possessed in imposing such restriction throughout Plaintiff's case-in-chief at the jury trial (SA 55-56). Now, Plaintiff attempts to persuade this Court to grant the extraordinary relief of setting aside a proper jury verdict on issues that Plaintiff **actively evaded** during trial—tactics that simply have no place before this Court and are not legitimate reasons to bring an appeal. Nevertheless, Appellees—despite the burden of proof being on Plaintiff—addressed and resolved these important factual matters that Plaintiff worked so hard to avoid (*id.*). After actively avoiding the resolution of these material facts at trial, Plaintiff and his counsel are obviously not entitled to a "second bite at the apple" merely because they refuse to accept that the jury did not credit their purely speculative theories. Accordingly, Plaintiff has utterly failed to establish that he is entitled to the extraordinary relief of a directed verdict under FRCP Rule 50(b), and the dismissal of his unpled freedom of assembly claim must be affirmed as a matter of law. Indeed, as the lower court correctly held

in its post-trial decision, "*because Plaintiff has failed to establish **any grounds** for post-trial relief, the motion for a [new] trial or for judgment as a matter of law must be denied as to this claim [i.e., freedom of assembly].*"  (SA-57) (emphasis added).

## B.   Plaintiff Failed to Preserve his Novel Claim Regarding Appellees' Affirmative Defense and Has Therefore Waived His Ability to Challenge Same on Appeal.

Plaintiff's "substantive claim" regarding the proof with respect to Appellees' affirmative defense is both nonsensical and procedurally barred.  First, Plaintiff failed to preserve his novel claim regarding his perceived issues with Appellees' affirmative defense, pursuant to FRCP Rule 50(a), prior to the case being submitted to the jury; thus, Plaintiff failed to preserve this novel argument for appellate review. *See e.g.*, *Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1155 (2d Cir. 2015) (barring claims on Rule 50(b) motion where movant failed to preserve those specific issues in Rule 50(a) motion); *Bracey v. Bd. of Educ.*, 368 F.3d 108, 117 (2d Cir. 2004) (holding courts in the Second Circuit may not excuse Rule 50(a) requirements).  Both the trial transcript and Plaintiff's brief before this Court acknowledge that "*the only question at issue on the Rule 50(b) motion, was whether, as a matter of law, the barment order was reasonable and viewpoint neutral*"— waiving all appellate challenges apart from Plaintiff's **unpled** freedom of assembly claim (*see* ECF No. 54 at 49, 50; JA 1563-1567).  Thus, Plaintiff's perplexing affirmative defense argument has not been properly preserved for review.

Second, Plaintiff's argument concerning his affirmative defense "claim" is not logical in light of the pertinent facts in this case. As best as can be discerned, Plaintiff appears to attempt to argue another "conflation theory"; first inferring an incorrect burden-shifting from Plaintiff's unpled assembly claim to Appellees' affirmative defense, while simultaneously (and illogically) arguing that the jury never reached the question of Appellees' affirmative defense (because the jury did not need to do so) (*see* ECF No. 54 at 33, 50). In fact, to the extent that Plaintiff and his counsel now take issue with the jury verdict form they now argue was not specific enough, throughout the pre-trial proceedings, Plaintiff consistently advocated for "*basic*" and "*succinct*" jury instructions, stating to the lower court, *inter alia*, that: "*I [Plaintiff's counsel] try when I do this to be as succinct . . . as I can be and, frankly, the same with the jury instructions.*" (*see* JA-1122). Moreover, Plaintiff never made any challenge to the jury instructions or jury verdict from, likewise failing to preserve such issues for appellee review (JA 1563-1567). Irrespective of the ambiguous "spin" that Plaintiff is attempting to put on the facts, the record before this Court is clear that the jury simply found that Plaintiff failed to satisfy his burden of proof, and that the underlying reasons for Appellees' implementation of the restriction were to protect the health, safety, and well-being of the varsity girls' basketball team in light of the numerous alarming/disturbing issues concerning Plaintiff's inappropriate January 9, 2017 behaviors. In light of the above, Plaintiff's

affirmative defense "claim" is procedurally barred, fundamentally flawed, and completely baseless.

## POINT III

### THE LOWER COURT'S DISMISSAL OF PLAINTIFF'S IMPLIED PROCEDURAL DUE PROCESS CLAIM MUST BE AFFIRMED

This Court need not devote much time to affirming the lower court's dismissal order of Plaintiff's defective procedural due process claim. In analyzing a procedural due process claim brought under 42 U.S.C. § 1983, courts consider: 1) whether the plaintiff possessed a liberty or property interest; and 2) if so, what process was due before the plaintiff could be deprived of that interest. *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). For one, Plaintiff failed to preserve his alleged due process claim in either his FRCP Rule 50(a) motion or post-trial motion to the lower court. Second, as Plaintiff acknowledges on appeal, this Circuit has repeatedly affirmed that parents **do not** have protected liberty or property interests in having unlimited access to school property. *See e.g.*, *Silano v. Sag Harbor Union Free Sch. Dis. Bd. of Educ.*, 42 F.3d 719, 724 (2d Cir. 1994). Further, as the lower court correctly determined in its decision dismissing Plaintiff's legally flawed due process claim, the restriction implemented by Appellees only implicated Plaintiff's ability to access the varsity girls' basketball team during the very specific times that the girls' basketball practices and games were held; and thus, such restriction was significantly more limited than the restriction at issue in *Johnson v.*

41

*Perry* (SA-13). Plaintiff likewise acknowledges in his papers before this Court that Plaintiff was "free" to participate and express himself in all other school events and be present on school grounds during any other appropriate date and time (*see* ECF No. 54 at 44-45). Accordingly, contrary to Plaintiff's suggestions, the narrowly-tailored restriction simply did not impede Plaintiff's "liberty interest" in the care, custody, and upbringing of Plaintiff's daughter, and the lower court's dismissal decision must therefore be affirmed as a matter of law.

## POINT IV

### PLAINTIFF HAS FAILED TO PLEAD, AND CANNOT ESTABLISH, A *MONELL* CLAIM AGAINST TROY CITY SCHOOL DISTRICT

Plaintiff's *Monell* claim against Troy CSD is equally fundamentally defective and the lower court's dismissal decision at the summary judgment stage can easily be affirmed. As the Supreme Court in *Monell* made clear, "a prerequisite to municipal liability" is for the plaintiff to "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733-36 [1989]); *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 692-94 (1978). It is well-settled that municipalities cannot be held vicariously liable for the actions of subordinates under 42 U.S.C. § 1983, but rather, only for their own illegal acts. *See Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986); *Monell*, 436 U.S. at 690. Even on a motion to dismiss, a plaintiff cannot prevail on a

*Monell* claim if the plaintiff fails to plead "sufficient factual detail" by which the purported constitutional violation can be directly attributed to the municipality's official policy or custom. *See e.g.*, *Maroney v. Vill. of Norwood*, 2020 U.S. Dist. LEXIS 132301, *17-18 (N.D.N.Y. 2020). Moreover, New York's Education Law plainly vests the authority to establish and publish policies of public-school districts with the Board of Education. *See* N.Y. Educ. L. § 1709(1), (2).

The lower court properly noted the distinction between final policymakers and mere decision-makers, citing United States Supreme Court precedent that has long held that "the decision must be made by an official with final policymaking authority, and not simply final decision-making authority." *See e.g.*, *Pembaur*, 475 U.S. at 481-82; *see also Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 438 (E.D.N.Y. 2016) ("While a superintendent may be a decision-maker, the Board of Education is the final policymaker."). Here, Plaintiff does not dispute that Appellee Carmello was not a final policymaker for Troy CSD (ECF No. 54 at 53), but instead attempts to argue that Appellee Carmello's **discretionary** decision to restrict Plaintiff from the varsity girls' basketball practices and games is somehow attributable to the Troy CSD Board of Education. This argument is legally defective for a multitude of reasons, and this Court must affirm the dismissal decision that was properly reached by the

lower court in its June 5, 2019 decision on Appellees' summary judgment motion (SA-15).

First, because Plaintiff's "freedom of assembly" claim is fundamentally defective, Plaintiff does not have any grounds to pursue a claim under the *Monell* doctrine against the Troy CSD. Second, to the extent that Plaintiff was required to preserve his *Monell* claim in his FRCP Rule 50(a) motion to the lower court, Plaintiff failed to preserve such issue and likewise did not argue any *Monell* claim in Plaintiff's October 9, 2020 post-trial motion for a directed verdict (JA 1563-1567; USDC NDNY ECF No. 132-3). Third, and most critically, it is undisputed that Appellee Carmello neither sought nor obtained authorization from the Troy CSD BOE when Appellee Carmello made the discretionary decision to implement the January 13, 2017 restriction (*see* JA-1471). In fact, Plaintiff acknowledges this fatal fact in his brief before this Court, conceding that "*the Board did not take any action*" regarding Appellee Carmello's discretionary decision (ECF No. 54 at 53). As the lower court correctly emphasized, 42 U.S.C. § 1983 **only** imposes "liability on a municipality when ***deliberate*** action attributable to the municipality itself is the moving force behind the plaintiff's deprivation." (SA-26); *Bd. of Cnty. Com'rs of Bryan Cnty.*, 520 U.S. 397, 400 (1997) (citing *Monell*, 436 U.S. at 694) (emphasis in original) (internal citations omitted). Fourth, as the lower court further correctly found,

"determining who may and may not enter school premises or attend school-related events is a discretionary function and does not rise to the level of a municipal policy or custom." (*See* SA-27).[10] Because Appellee Carmello is unquestionably not a final policymaker for Troy CSD and because, in any event, Appellee Carmello merely made a discretionary decision regarding Plaintiff's presence at the girls' basketball practices and games, summary judgment on Plaintiff's *Monell* claim was clearly proper and must be affirmed by this Court as a matter of law.

## POINT V

### THE JURY'S SEPTEMBER 11, 2020 VERDICT CONFIRMED THAT APPELLEES CARMELLO AND REINISCH ARE ENTITLED TO QUALIFIED IMMUNITY AS A MATTER OF LAW

Both the lower court and this Court deferred the question of Appellee Carmello's and Reinisch's entitlement to qualified immunity until further presentation of evidence at trial to assess the simple factual question of whether Appellee Carmello's and Reinisch's January 13, 2017 restriction was motivated by

---

[10] Plaintiff's attempted *Monell* argument in connection with Troy CSD's privately retained attorney, Kathy Ahearn, is even further attenuated and more absurd than his argument with respect to Appellee Carmello. In that regard, it is incontrovertible that Ms. Ahearn: 1) is not a "state actor" and therefore could not engage in any "state action" on behalf of the Troy CSD; 2) is not even a final decision-maker, let alone the requisite ***final policymaker*** that is required to establish municipal liability under § 1983; 3) was not involved in the investigation regarding Plaintiff's inappropriate January 9, 2017 behaviors with the varsity girls' basketball team; and 4) did not have any involvement in Appellee Carmello's ***discretionary*** decision to implement the January 13, 2017 restriction. Thus, Plaintiff's *Monell* argument with respect to Ms. Ahearn is fundamentally flawed.

the content of Plaintiff's alleged "speech." By its June 5, 2019 decision denying that portion of Appellee Carmello's and Reinisch's summary judgment motion on qualified immunity grounds, that lower court stated that "*since questions of fact remain as to the restriction's reasonableness and neutrality, Defendants are not entitled to qualified immunity.*" (SA-24). Similarly, in March 2020, this Court specifically concluded, in its Summary Order on Appellees' interlocutory appeal on the qualified immunity issue, the following:

> [Plaintiff's] First Amendment claim in this case is a motive-based constitutional tort . . . That is, whether the ban violated his First Amendment rights turns on whether Defendants imposed the ban to punish [Plaintiff] for expressing dissatisfaction about Coach Bearup or for a viewpoint-neutral reason. Accordingly, the District Court correctly concluded that Defendants were not entitled to qualified immunity at summary judgment in light of the unresolved factual disputes over Defendants' motivation for banning Frierson from future sporting events.

*Frierson v. Reinisch,* 806 Fed. Appx. 54, 60 (2d Cir. 2020). Thus, the lower court and this Court have clearly held that it was a question of fact (as opposed to law) concerning Appellee Carmello's and Reinisch's motives that necessitated a trial and precluded their right to qualified immunity prior to trial. In other words, but for the lower court's findings that a fact-finder (in this case, the jury trial that Plaintiff demanded) needed to determine whether Appellee Carmello's and Reinisch's restriction was motivated by a legitimate motive, or unconstitutional motive, Plaintiff's claims would not have been trial worthy in the first instance.

There can be no doubt that the trial jury's unanimous September 11, 2020 verdict in Appellee Carmello's and Reinisch's favor constituted a finding that Appellee Carmello's and Reinisch's January 13, 2017 restriction was **not motivated** by Plaintiff's alleged "speech." The clear resolution of that factual issue—the resolution that Plaintiff argued was so important—confirms that Appellees Carmello and Reinisch are entitled to immunity from suit as a matter of law. Accordingly, since Plaintiff failed to carry his burden of proving that Appellees Carmello and Reinisch were motivated by Plaintiff's alleged "speech," the jury's unanimous verdict entitled Appellees Carmello and Reinisch to immunity as a matter of law, further requiring this Court to affirm the decision of the lower court and deny Plaintiff's appeal in its entirety.

## **CONCLUSION STATING THE PRECISE RELIEF SOUGHT**

WHEREFORE, for all of the foregoing reasons, Appellees respectfully request an Order from this Court: 1) granting Appellees' Cross-Appeal, in all respects, to the extent indicated herein; 2) dismissing Plaintiff's appeal in its entirety; 3) awarding Appellees the full costs and fees associated with both Plaintiff's appeal and Appellees' Cross-Appeal; and 4) granting such other and further relief in Appellees' favor as this Honorable Court deems just and proper.

Dated: June 6, 2022

Respectfully submitted,

JOHNSON & LAWS, LLC

By:     Loraine C. Jelinek

48

**Certificate of Compliance With Type-Volume Limit,**
**Typeface Requirements, and Type-Style Requirements**

I, Loraine C. Jelinek, hereby certify that the within Brief of Defendants - Appellees – Cross-Appellants was prepared in accordance with the following:

1.    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(e) and Local Rule 28.1.1. because this brief contains 11,630 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a5) and the type style requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 14 characters per inch and Times New Roman type style.

Dated: June 6, 2022

Respectfully submitted,

JOHNSON & LAWS, LLC

By:    Loraine C. Jelinek

49